# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **HYUNDAI MOTOR AMERICA, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**CLEAR WITH COMPUTERS, LLC**<br><br>**Defendants.** | **Civil Action No: 6:08-cv-302-LED**<br><br>**JURY** |
| **and Related Counterclaims.** | |

---

## DEFENDANT CLEAR WITH COMPUTERS, LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF HYUNDAI MOTOR AMERICA, INC.'S CONTINUING INFRINGEMENT OF U.S. PATENT NO. 5,367,627

---

2995-002 090424 HMA MSJ

## TABLE OF CONTENTS

Page

I.      ISSUE PRESENTED ...................................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIALS FACTS .............................................1

      1.      The Court entered Final Judgment that the Accused Websites literally infringe
            Claims 1, 7 and 8 of the '627 Patent;.....................................................................1

      2.      HMA made only two changes to the Accused Websites:
            1) disabling the link from www.hyundaiusa.com; and 2) placing banners
            on the Accused Websites; ......................................................................................1

      3.      Neither of these two changes made by HMA alters the functionality of the
            Accused Websites;................................................................................................1

      4.      The unrebutted testimony at trial was that, with respect to the
            Accused Websites, HMA's customers include dealers.........................................1

III.    SUMMARY OF ARGUMENT:  HMA'S PURELY COSMETIC CHANGES TO THE
       ACCUSED WEBSITES HAVE NO BEARING ON ANY LIMITATION OF THE
       ASSERTED CLAIMS OR THE JURY'S VERDICT OF WILLFUL INFRINGEMENT
       OF THE '627 PATENT.  HMA CONTINUES TO INFRINGE THE '627 PATENT AS A
       MATTER OF LAW. ....................................................................................................2

IV.     BACKGROUND........................................................................................................4

      A.      Overview of the Underlying Proceedings. ............................................................4

      B.      The Jury Determined That HMA's Sales to Dealers Through the Accused
            Websites Infringe the '627 Patent.........................................................................6

      C.      HMA's Design-Around Modifications Do Not Change the Functionality of the
            Accused Websites. ...............................................................................................8

V.      ARGUMENT:  CWC'S MOTION SHOULD BE GRANTED BECAUSE HMA
       CONTINUES TO INFRINGE THE '627 PATENT AS A MATTER OF LAW..............9

      A.      This Motion Is Proper Because There Are No Genuine Issues Of Material Fact...9

      B.      HMA's De Minimis Modifications To The Accused Websites Do Not Affect The
            Infringement Analysis Because Such Changes Are Not Relevant To Any
            Limitation Of Any Infringed Claim Of The '627 Patent. .....................................10

      C.      Principles Of Claim Preclusion Bar HMA From Now Re-Litigating The Jury's
            Finding That Its Sales To Dealers Infringe The '627 Patent................................12

## TABLE OF CONTENTS

Page

    1.    HMA is barred by claim preclusion from re-litigating the construction of the term "customer" to exclude HMA dealers. ........................................ 12

    2.    Claim preclusion bars HMA from re-litigating whether the same functionality of the Accused Websites that was presented to the jury infringes the '627 Patent. ....................................................................... 13

VI.    CONCLUSION:  AS A MATTER OF LAW, HMA CONTINUES TO INFRINGE THE '627 PATENT. .......................................................................................................... 15

## TABLE OF AUTHORITIES

Page

### CASES

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)...................................................................................... 9

*Desper Prods., Inc. v. Qsound Lab, Inc.,*
  157 F.3d 1325 (Fed. Cir. 1998) ................................................................... 9

*Markman v. Westview Instruments, Inc.,*
  52 F.3d 967 (Fed. Cir. 1995)....................................................................... 9

*Pfaff v. Wells Elecs.,*
  5 F.3d 514 (Fed. Cir. 1993) ................................................................12, 13

*Robi v. Five Platters, Inc.,*
  838 F.2d 318 (9th Cir. 1988)..................................................................... 13

*Southern Pac. R.R. Co. v. United States,*
  168 U. S. 1 (1897) ...................................................................................... 12

*United States v. Mendoza,*
  464 U.S. 154 (1984).................................................................................... 12

*United States v. Moser,*
  266 U.S. 236 (1924).................................................................................... 12

*United Tech. Corp. v. Chromalloy Gas Turbine Corp.,*
  189 F.3d 1338 (Fed. Cir. 1999) ................................................................ 12

### RULES

Fed. R. Civ. P. 56(c) ............................................................................................. 9

Defendant and Counterclaimant Clear With Computers, LLC, f/k/a Orion LP, LLC ("CWC") respectfully moves this Court for summary judgment in its favor as to Plaintiff and Counter-defendant Hyundai Motor America, Inc. ("HMA")'s complaint for declaratory judgment (Dkt. No. 1), and summary adjudication in its favor as to liability on Count I (Infringement of U.S. Patent No. 5,367,627) (the "'627 Patent") of CWC's Counterclaims (Dkt. No. 16).

## I.      Issue Presented

Do HMA's www.hyundaidealer.com and Dealer Communication System ("DCS") (collectively, the "Accused Websites"), which a jury found and this Court confirmed willfully infringe the '627 Patent in that litigation styled *Orion IP, LLC v. Hyundai Motor America* (the "Underlying Litigation"), continue to infringe as a matter of law after HMA's modifications?

## II.     Statement of Undisputed Materials Facts

CWC is entitled to summary judgment on HMA's declaratory judgment claim because it is undisputed that:

1.      The Court entered Final Judgment that the Accused Websites literally infringe Claims 1, 7 and 8 of the '627 Patent;

2.      HMA made only two changes to the Accused Websites: 1) disabling the link from www.hyundaiusa.com; and 2) placing banners on the Accused Websites;

3.      Neither of these two changes made by HMA alters the functionality of the Accused Websites;

4.      The unrebutted testimony at trial was that, with respect to the Accused Websites, HMA's customers include dealers.

**III.** **Summary of Argument:  HMA's Purely Cosmetic Changes To The Accused Websites Have No Bearing On Any Limitation Of The Asserted Claims Or The Jury's Verdict of Willful Infringement Of The '627 Patent.  HMA Continues To Infringe The '627 Patent As A Matter Of Law.**

HMA's Declaratory Judgment Complaint (Dkt. No. 1) – a single count for declaratory judgment of non-infringement – must fail, because HMA's www.hyundaidealer.com and Dealer Communication System ("DCS") (collectively, the "Accused Websites") continue to infringe the '627 Patent as a matter of law.  Neither of the two so-called "modifications" HMA has made to the Accused Websites has any bearing on the infringement analysis of any of the asserted claims of the '627 Patent because neither change relates to any element of these claims.  Indeed, the proffered changes, both purely cosmetic, do not alter the functionality of the Accused Websites the jury found to be infringing in the Underlying Litigation.  Accordingly, CWC is entitled to summary judgment on HMA's declaratory relief claim, and to summary adjudication as to liability on its counterclaim for infringement of the '627 Patent.

The extent of HMA's purported "design around" is startlingly deficient.  After nearly three years of heavily contested litigation and a weeklong trial, a jury found on May 29, 2007 that the Accused Websites literally and willfully infringe Claims 1, 7, and 8 of the '627 Patent.  *See* Underlying Litigation Jury Verdict (Dkt. No. 576).  It was thus surprising that, less than three weeks later, HMA claimed it had summarily implemented a design-around that circumvented the infringement verdict.  HMA admits that the *only* changes to the Accused Websites are (1) disabling the link from the public website - www.hyundaiusa.com to the dealer website - www.hyundaidealer.com, and (2) placing banners throughout the web parts catalog portion of the Accused Websites stating that the catalog is not appropriate for customer viewing.  The first modification – disabling the link from www.hyundaiusa.com – merely changes how one accesses the Accused Websites, but does not alter the functionality of the Accused Websites that the jury found to infringe.  The second modification – putting banners up on the Accused Websites – is purely cosmetic and does not alter the functionality of the Accused Websites at all.

Neither of these changes is relevant to the claims as construed by the Court or as argued by either side in the Underlying Litigation.  In fact, the notion that merely changing how the site is accessed and/or placing banners on the Accused Websites avoids further infringement on a patent *keyed on the utility and functionality* of the Accused Websites borders on the absurd. Indeed, HMA's modifications to the Accused Websites are so superficial and lacking in substance that, far from avoiding infringement, they instead demonstrate HMA's lack of regard for the jury's verdict and this Court's Final Judgment.

While unclear, HMA's non-infringement argument seems to be that, by limiting access to the Accused Websites to dealers rather than to both dealers and *consumers*, the Accused Websites no longer meet the "proposal" limitation (construed as "information intended for conveyance to a potential customer") because the information prepared by the Accused Websites is for dealers, not "customers."  HMA's argument thus assumes, incorrectly, that dealers are not "customers."

*The fundamental and dispositive flaw in HMA's non-infringement argument is that HMA is barred by claim preclusion from now re-litigating whether the dealers are HMA's "customers."* HMA never requested and the Court never construed the term "customers" to exclude dealers.  Similarly, HMA never argued that sales to dealers should be excluded from the royalty base, or that sales to dealers should be treated differently for infringement purposes than sales to consumers.  Rather, the unrebutted evidence presented at trial was that, as to the Accused Websites, the *dealers are HMA's customers.*  Principles of claim preclusion bar HMA from now re-litigating either the claim construction or the jury's infringement determination.

Because HMA's claimed modifications to the Accused Websites are simply irrelevant to the infringement analysis, and because claim preclusion bars HMA from re-litigating the claim constructions and infringement determinations in the Underlying Litigation, HMA continues to infringe Claims 1, 7, and 8 of the '627 Patent as a matter of law.

IV.   **Background**

A.    Overview of the Underlying Proceedings.

In the Underlying Litigation, CWC alleged and the jury found that the Accused Websites willfully infringe Claims 1, 7 and 8 of the '627 Patent.  The '627 patent generally describes a computerized method of selling parts for particular equipment.[1]

Of the claims of the '627 Patent asserted in the Underlying Litigation (Nos. 1, 7, and 8), Claim 1 is the only independent claim.  Claim 1 recites:

1.    A computerized method of selling parts for particular equipment specified by a customer, comprising the steps of:

a)    receiving information identifying a customer's parts requirements for the equipment, comprising the step of receiving equipment application information, comprising an identification of the equipment with which one or more parts are to be used;

b)    electronically specifying information identifying a plurality of parts and specifications for the parts;

c)    gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements, comprising the step of electronically associating at least one of the parts within the plurality of parts with the received equipment application information; and

d)    receiving the gathered parts-related information and compiling the parts-related information into a proposal meeting the customer's requirements.

---

[1] Relevant excerpts from the '627 Patent are attached hereto as Exhibit A.

CWC alleged, and the jury found, that HMA willfully infringed these claims by selling and offering for sale HMA parts over the Accused Websites.   Underlying Litigation Second Amended Complaint ¶ 17, March 21, 2006 (Dkt. No. 163).

Only a few weeks after the jury verdict, HMA implemented an alleged "design-around" that HMA contends renders the Accused Websites non-infringing.   In post-trial motions, HMA argued that because of the design-around, HMA should not be liable for ongoing royalties. The Court rejected HMA's arguments, confirmed that the Accused Websites had been ruled to infringe, and ordered that post-verdict royalties be paid *for all time periods, both before and after the alleged June 19, 2007 work-around*.   Specifically, the Court awarded a "two percent 2% running post-verdict royalty on Hyundai's parts sales revenue generated through www.hyundaidealer.com and/or the Hyundai Dealer Communication System from May 1, 2007, through June 19, 2007" and a "two percent (2%) running post-verdict royalty on Hyundai's parts sales revenue generated through www.hyundaidealer.com and/or the Hyundai Dealer Communication System from and after June 19, 2007." Underlying Litigation April 9, 2008 Judgment (Dkt. No. 642)[2].  As the Court further explained,

> "[the] jury determined that [HMA]'s website infringed, and the Court determined the appropriate royalty rate for ongoing infringement. Whether or not [HMA] has materially changed its website so that it no longer infringes is a fact issue that is not properly before the Court at this time. Accordingly, based on the jury's verdict, the Final Judgment will reflect that Hyundai's website infringes [CWC]'s patent. [HMA] can challenge whether its website continues to infringe via a declaratory judgment action or, if [HMA] does not comply with the terms of the Final Judgment, [CWC] can file its own action to enforce the Judgment." Underlying Litigation April 9, 2008 Order (Dkt. No. 641).

> This action followed.

---

[2] HMA has bonded the Judgment in the Underlying Litigation pending appeal.

5

B.     The Jury Determined That HMA's Sales to Dealers Through the Accused
       Websites Infringe the '627 Patent.

At trial, both CWC and HMA recognized that, as to the Accused Websites, the dealers

are HMA's customers.  The *unrebutted* testimony at trial was that the term "customer" includes

both HMA's retail consumers and dealers.   Indeed, Dr. Thomas V. Rhyne, CWC's technical

expert for infringement, testified as follows:

> "You can think of it in this sense:  *That the customer is really the dealer*, and
>
> Hyundai's goal in providing that service is to motivate their dealers to buy parts
>
> from the Hyundai Motor Corporation, so that they would have those parts in
>
> stock.  Certainly the dealers want to use them either to repair cars in their service
>
> department or sell them to their customers.  *But the customer here is the dealer*,
>
> and the motivation for having that website is so that Hyundai can sell part[s] for
>
> their automobiles to their dealers."[3]

HMA never disputed that the dealers are its customers.   HMA's Executive Vice

President, Frank Ferrara, testified that HMA would be at a competitive disadvantage if it could

not use the Accused Websites to sell parts to both dealers and consumers.[4]   Moreover, HMA

admitted that virtually all of its parts sales are to dealers and that its dealers are HMA's

customers:

> "Q.   Where – where are you selling those parts?  Who's – who's buying these
>
> parts?
>
> A.   Well, we – we virtually only sell to dealers. . . . So, today, we have 725
>
> dealers across the country; and those are our customers.  We have a couple of
>
> vendors, maybe, that – that we supply, but it's, you know, 99 percent dealer
>
> business."[5]

---

[3] Underlying Litigation Trial Transcript, May 22, 2007, 159:4-13 (attached as Exhibit B) (emphasis added).
[4] Relevant excerpts from the '627 Patent are attached hereto as Exhibit A.
[5] Underlying Litigation HMA 30(b)(6) Deposition Transcript, October 25, 2006, 15:2-9 (attached as Exhibit D).

Moreover, the jury awarded damages based on HMA's sales to dealers.  HMA's damages expert, James Davis, testified that for the '627 Patent, the royalty rate should be 2%, and that the royalty should be applied to HMA's gross revenue on parts sales through the Accused Websites.[6] Because HMA's sales are "99 percent dealer business," the gross revenue from parts sales necessarily included the sales to dealers.

After considering the evidence (including the unrebutted evidence that dealers are customers), and following a week long trial, a jury determined that Hyundai's Accused Websites infringed Claims 1, 7 and 8 of the '627 patent.  Underlying Litigation May 29, 2007 Jury Verdict at 2 (Dkt. No. 576).   The jury awarded damages of $34 million for past infringement.  In its order denying HMA's post-trial motion for remittitur, the Court found that the jury award of $34 million adopted Mr. Davis' evidence as to royalty rate and base, and further that such findings were supported by the evidence.  Underlying Litigation Mem. Op. and Order, at 4-6 (Dkt. No. 638).

At no point during the Underlying Litigation did HMA contend that "customers" should be construed to exclude "dealers," (neither CWC nor HMA argued that the term "customers" should be narrowed from its plain and ordinary meaning).  Rather, HMA's corporate testimony was that its dealers were its customers[7].

After losing at trial, HMA filed a motion for remittitur, challenging the jury's damages award.  HMA argued against both the royalty rate and the royalty base.  The Court rejected HMA's post-trial attempt to re-argue what should be subject to the royalty:

> "Hyundai cannot wait until trial is over to claim [CWC]'s royalty base was inaccurate.  Once [CWC] presented its royalty base at trial, Hyundai then had an obligation to present evidence rebutting [CWC]'s position."  Underlying Litigation, Mem. Op. and Order, at 5-6 (Dkt. No. 638).

---

[6] Relevant excerpts from the '627 Patent are attached hereto as Exhibit A.
7 HMA 30(b)(6) Deposition Transcript, October 25, 2006, 15:2-9 (attached as Exhibit D).

The Court then concluded, "The jury's verdict is sufficiently supported by the evidence and arguments that were presented to the jury."  Id.

C.      HMA's Design-Around Modifications Do Not Change the Functionality of the Accused Websites.

Less than three weeks after the jury's verdict of infringement, HMA claimed to have implemented a "design around" to the Accused Websites that it asserts avoids continuing infringement of the '627 Patent.  However, HMA admits that it made only two changes to the websites since the verdict in the Underlying Litigation. See June 19, 2007, Declaration of Bob Stephenson filed in support of HMA's Opposition to Orion's Motion for Entry of a Permanent Injunction or Post-Verdict Royalty (Dkt. No. 596, Exh. A, ¶ 5); HMA's February 22, 2009 Responses to CWC's Requests for Admissions, Set 1, Response to Request 1 (attached hereto as Exhibit F) (admitting that the Declaration of Bob Stephenson "contains a fair and accurate description of the changes made to the websites and/or electronic parts proposal systems, and that no other relevant changes have been made.").  The only two changes were that HMA: (1) disabled the link from www.hyundaiusa.com (public website) to www.hyundaidealer.com (dealer website), and (2) placed banners throughout the Accused Websites stating that it is not appropriate for customer viewing.

The first change – disabling the link – merely affects how a user can navigate his/her browser to the Accused Websites.  Previously, HMA had a hyper-link on its public website, www.hyundaiusa.com, that a user could click, which would then direct the browser to the Accused Websites.  HMA's first modification was to disable that link, so that a user visiting www.hyundaiusa.com can no longer click through to access the www.hyundaidealer.com site. Instead, a user must actually type "www.hyundaidealer.com" into the address field of the browser to access the site.[8]  However, HMA did nothing to alter the functionality of the Accused Websites at all.  *In other words, once the user reaches the Accused Website, it functions exactly*

---

[8] At no time during the Underlying Litigation did CWC rely on the link between www.hyundaiusa.com and www.hyundaidealer.com to prove infringement of any element of any claim of the '627 Patent.

*the same way it did when the jury determined it to be infringing.*   Accordingly, HMA takes the untenable position that accessing a webpage by clicking is substantively different than accessing a webpage by typing in an address.

The second change – placing banners on the Accused Website – is purely cosmetic.  The banners only display a message to the user of Accused Websites that the site is not appropriate for consumers.  This does nothing to take away from the fact that HMA's customers (its dealers) are using the Accused Websites to order parts via the methods taught by the '627 Patent that the jury found to infringe.  Like the first modification, this one leaves the infringing functionality absolutely unchanged.

**V.     Argument:  CWC's Motion Should Be Granted Because HMA Continues To Infringe the '627 Patent As A Matter of Law.**

   A.     <u>This Motion Is Proper Because There Are No Genuine Issues Of Material Fact</u>.

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  "Summary judgment is as appropriate in a patent case as it is in any other case."  *Desper Prods., Inc. v. Qsound Lab, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998).

The determination of whether an accused product or process infringes a claim of a patent involves two steps.  First, the court construes the disputed terms of the asserted claims to determine their meanings and scope.  Second, the construed claims are compared to the accused product.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

Here, HMA's Accused Websites have been found by a jury to willfully infringe every element of Claims 1, 7, and 8 of the '627 Patent.  There are no factual disputes as to the scope of the only modifications made to the Accused Websites.  As explained further below, because the changes made are not relevant to any limitation of any infringed claim of the '627 Patent (indeed they do not even affect the functionality of the Accused Websites), the issue of ongoing

infringement is ripe for summary judgment as to HMA's declaratory relief claim and summary adjudication as to liability on CWC's counterclaim for infringement of the '627 Patent.

> B.   HMA's *De Minimis* Modifications To The Accused Websites Do Not Affect The Infringement Analysis Because Such Changes Are Not Relevant To Any Limitation Of Any Infringed Claim Of The '627 Patent.

As the background facts set forth above make clear, HMA's argument that it has ceased all infringing activity with respect to the Accused Websites is without merit.  *HMA has not disabled, nor even altered the functionality of disabling the Accused Websites and how HMA uses them to sell parts to dealers.*   Neither the link from www.hyundaiusa.com to www.hyundaidealer.com nor placing banners throughout the Accused Websites stating that it is not appropriate for customer viewing has any bearing on any element of any infringed claim of the '627 Patent.  The dealers still access the Accused Websites the same way, still enter information the same way, and the Accused Websites still compile that information into a proposal the exact same way as when the jury found infringement.

HMA seems to be arguing that it no longer infringes the '627 Patent because its retail customers are told not to order parts from the Accused Websites and that only dealers are permitted to order parts through the Accused Websites.  HMA's theory seems to be that because only dealers order parts, the Accused Websites do not provide a "proposal," which the Court construed as "information intended for conveyance to a potential customer."   Underlying Litigation Mem. Op. and Order, at 32 (Dkt. No. 488).  In other words, HMA's theory assumes – incorrectly – that dealers cannot be "customers."

 HMA's theory fails, however, because the jury was presented with unrebutted evidence that the dealers are HMA's customers.  As noted above, Dr. Rhyne testified at trial that for the parts ordering system of HMA, the "customer is really the dealer."  Underlying Litigation Trial Transcript, May 22, 2007, 159:1-13 (attached as Exhibit B).  Likewise, HMA's Executive Vice President, Frank Ferrara, acknowledged that HMA uses the Accused Websites to sell parts to

both dealers and consumers.  Trial Transcript, May 23, 2007, 255:21-256:1 (attached as Exhibit C).

Additionally, HMA's corporate designee on HMA's Accused Websites admitted that the dealers are HMA's customers:

"Q.   Where – where are you selling those parts?  Who's – who's buying these parts?

A.    Well, we – we virtually only sell to dealers. . . . So, today, we have 725 dealers across the country; and those are our customers.  We have a couple of vendors, maybe, that – that we supply, but it's, you know, 99 percent dealer business."

HMA 30(b)(6) Deposition Transcript, October 25, 2006, 15:2-9 (attached as Exhibit D).

Finally, as discussed above, the jury awarded damages based on sales to dealers, and the Court found that such award was supported by the evidence.  Thus, it cannot be disputed that the jury's verdict included sales to dealers.

As HMA acknowledges, it has only disabled the link from its public website, www.hyundaiusa.com, to the Accused Websites, at best preventing members of the general public who access www.hyundaiusa.com from accessing and ordering parts through the Accused Websites.  HMA has done nothing to prevent dealers – the admitted direct customers of HMA – from ordering parts through the www.hyundaidealer.com website.  Indeed, it is undisputed that HMA continues to sell parts to its dealer customers using the Accused Websites in the exact same way that the jury found to be infringing.  Because the jury has already decided HMA's sales to dealers through the Accused Websites infringe (pursuant to an uncontested claim construction that is now the law of the case), HMA cannot re-litigate the claim construction issue.

C.     Principles Of Claim Preclusion Bar HMA From Now Re-Litigating The Jury's Finding That Its Sales To Dealers Infringe The '627 Patent.

     1.     HMA Is Barred By Claim Preclusion From Re-Litigating The Construction Of The Term "Customer" To Exclude HMA Dealers.

Having had a full and fair opportunity to litigate the construction of the term "customer," HMA is barred by claim preclusion (whether branded res judicata or collateral estoppel) from attempting to now obtain a new claim construction limiting the term to exclude dealers. *Pfaff v. Wells Elecs.*, 5 F.3d 514, 517-18 (Fed. Cir. 1993) ("The prior claim interpretation has issue preclusive effect in the present case insofar as it was necessary to the judgment of noninfringement in the previous case.").

As the Supreme Court has held, once an issue has been determined as between two parties in one lawsuit, it "must" be taken as conclusively established in a second lawsuit between those two parties:

"[A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

*United States v. Moser*, 266 U.S. 236, 241 (1924) (citing *Southern Pac. R.R. Co. v. United States*, 168 U. S. 1, 48 (1897)).  It is black letter law that collateral estoppel applies not only to findings of fact, but also conclusions of law.  *United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."); *United Tech. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338 (Fed. Cir. 1999)

(subsequent litigation of a claim is barred if it arises out of the same subject matter as a previous suit and, through the exercise of diligence, could have been litigated in a prior suit); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding.")

This case presents a textbook example of claim preclusion.  Despite having had an opportunity to do so, HMA never requested that the Court construe "customer" to exclude dealers.  Indeed, HMA did not suggest that the term "customer" needed any construction.  See *e.g.*, Underlying Litigation Mem. Op. and Order, at 1-2, (Dkt. No. 488).  Then at trial, HMA did not present any evidence suggesting that customers do not include dealers.[9]  By leaving "customer" broad enough to include dealer, HMA apparently made the strategic decision to focus on invalidity rather than infringement.  Having declined the opportunity to present its new non-infringement theory to the jury, or to argue to the Court for a different claim construction, HMA is now bound by its choices.  *Pfaff*, 5 F.3d at 517-18.

2.   Claim preclusion bars HMA from re-litigating whether the same functionality of the Accused Websites that was presented to the jury infringes the '627 Patent.

The simple, undisputed truth is that HMA's modifications do not affect how HMA sells parts to dealers using the Accused Websites.  The Accused Websites receive information from the dealers, gather parts-related information and compile the parts-related information into a proposal for the dealers exactly as they did when the jury found infringement.  Thus, HMA's modifications really are nothing more than a thinly disguised excuse to try to re-litigate whether HMA's use of the Accused Websites to sell parts to dealers infringes the '627 Patent.  But claim preclusion bars HMA from re-litigating this issue, as the Court already found in denying HMA's motion for remittitur.

---

[9] To the contrary, its representatives affirmatively testified that customers include dealers.  *See supra.*

As noted above, the unrebutted evidence presented at trial was that, as to the Accused Websites, the *dealers are HMA's customers*, and the royalty base presented to the jury included sales to dealers. Based on that evidence, the jury found infringement and found damages of $34 million, which correlated to a 2% royalty on parts sales through the Accused Websites (99% of which was attributable to sales to dealers). HMA never argued that sales to dealers should be excluded from the royalty base, or that sales to dealers should be treated differently for infringement purposes than sales to consumers and should not be included in the royalty base. HMA cannot so argue now.

HMA's current position is strikingly similar to the argument that HMA made – and the Court rejected – in connection with HMA's motion for remittitur. In its remittitur motion, HMA tried to raise an argument for the first time that the royalty base was incorrect because not all of the parts included in the royalty base were sold through the infringing website. HMA had chosen not to challenge the royalty base at trial, instead arguing that parts sales should not be used as the royalty base at all. The Court rejected HMA's attempt to raise arguments after the trial that it failed to raise during trial:

> "Hyundai's expert testified that he believed it was inappropriate to use the parts sold as a royalty base . . . and offered no alternative running royalty rate. The jury listened to both [CWC]'s and Hyundai's damages experts and ultimately rejected Hyundai's damages theory. Hyundai cannot wait until trial is over to claim [CWC]'s royalty base was inaccurate. Once [CWC] presented its royalty base at trial Hyundai then had an obligation to present evidence rebutting Orion's position." Underlying Litigation Mem. Op. and Order, at 5-6 (Dkt. No. 638).

Similarly, HMA chose not to argue at trial that sales to dealers should be treated differently from sales to consumers. HMA could have, but did not, argue that the royalty base was incorrect because it included sales to dealers. For the same reasons the Court rejected the remittitur motion, and additionally because the Court has now entered Final Judgment in the Underlying Litigation, the Court should rule that HMA continues to infringe the '627 Patent

under the doctrine of claim preclusion.  The Court has already held that the "evidence is sufficient to support the jury's award," and such holding is binding. Underlying Litigation Mem. Op. and Order, at 6 (Dkt. No. 638).

## VI.    CONCLUSION:  AS A MATTER OF LAW, HMA CONTINUES TO INFRINGE THE '627 PATENT.

Because it is undisputed that HMA has not ceased or even altered the functionality of the Accused Websites the jury found to infringe, CWC respectfully requests that this Motion be granted.  Judgment should be entered in favor of CWC on HMA's Declaratory Relief claim.  For the same reasons, summary adjudication should be granted as to patent infringement liability in CWC's favor on its counterclaim for infringement of the '627 Patent.[10]

Respectfully submitted,

**CLEAR WITH COMPUTERS, LLC.**

Dated:  April 24, 2009

By: /s/  Marc A. Fenster
 Marc A. Fenster, CA SB # 181067
 E-mail: mfenster@raklaw.com
 RUSS, AUGUST & KABAT
 12424 Wilshire Boulevard 12th Floor
 Los Angeles, California 90025
 Telephone:   310/826-7474
 Facsimile:    310/826-6991

 Andrew W. Spangler - LEAD COUNSEL
 TX SB # 24041960
 Spangler Law PC
 208 N. Green Street, Suite 300
 Longview, TX 75601
 Telephone:   903/753-9300
 Facsimile:    903/553-0403
 Email: spangler@spanglerlawpc.com

---

[10] CWC seeks summary adjudication as to liability only, as damages for HMA's infringement of the '627 Patent remains an issue to be determined at trial.

David M. Pridham
R.I. Bar No. 6625
Law Office of David Pridham
25 Linden Road
Barrington, Rhode Island 02806
Telephone:   401/633-7247
Facsimile:    401/633-7247
david@pridhamiplaw.com

**ATTORNEYS FOR DEFENDANT**
**Clear With Computers, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated:  April 24, 2009

        /s/ Marc A. Fenster   
Marc A. Fenster
