# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **HYUNDAI MOTOR AMERICA** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **CASE NO. 6:08 CV 302** |
| § | |
| **CLEAR WITH COMPUTERS, LLC** § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Hyundai Motor America's ("Hyundai") partial motion to dismiss count 1 of Clear With Computers, LLC's ("CWC") counterclaims (Docket No. 41), Hyundai's motion for summary judgment on Hyundai's request for declaratory judgment of non-infringement (Docket No. 67), and CWC's motion for summary judgment of Hyundai's continuing infringement of U.S. Patent No. 5,367,627 (Docket No. 68). Having considered the parties' written submissions and oral arguments, the Court **DENIES** Hyundai's motion to dismiss (Docket No. 41), **DENIES** Hyundai's motion for summary judgment (Docket No. 67), and **GRANTS** CWC's motion for summary judgment (Docket No. 68).

## BACKGROUND

This suit arises out of prior litigation between the parties. In *Orion IP, LLC v. Mercedes-Benz USA, LLC, et al.*, 6:05cv322 (E.D. Tex. filed Aug. 30, 2005) (Davis, J.), Orion, now known as CWC, brought suit against Hyundai and several other defendants alleging their websites infringed U.S. Patent Nos. 5,367,627 and 5,615,342. The '627 patent generally describes a computerized system that assists a salesperson in training and with sales of parts corresponding to particularized

products. The system includes a data storage device that stores graphic and textual information including specifications, features, and customer benefits. A display apparatus displays portions of this information. A parts selection device electronically navigates through parts-choice menus based on previously entered information. The invention is said to eliminate the need for salespeople to use more cumbersome paper-based methods of determining the most appropriate part for a customer.

Orion settled with all other defendants prior to trial. At trial, Hyundai alleged it did not infringe the patents and the patents were invalid. The parties tried the case to a jury, and the jury found Hyundai infringed the '627 patent, Hyundai's infringement of that patent was willful, the '627 patent was not invalid, and Hyundai did not infringe the '342 patent. The jury awarded Orion $34 million in damages for Hyundai's infringement of the '627 patent. The Court entered final judgment on the verdict and awarded Orion an ongoing royalty for Hyundai's continued infringement.

Shortly after trial, Hyundai redesigned its accused websites and contended they no longer infringed the '627 patent. Specifically, Hyundai disabled the link from hyundaiusa.com to hyundaidealer.com, modified hyundaidealer.com to require a password given only to dealers, and added a banner to the Web Parts Catalog warning that the Catalog is not intended for retail customer viewing. Thus, on the redesigned websites, retail customers cannot access the web parts catalog. Apart from these changes, the websites' functionality remains the same. There is no factual dispute over the content of the modifications or the websites' functionality.

Hyundai filed this suit seeking a declaratory judgment that its redesigned websites no longer infringe the '627 patent. CWC counterclaimed that the new sites do infringe the '627 patent (Count 1), the '342 patent (Count 2), and U.S. Patent No. 5,493,490 (Count 3), which was not asserted in the *Orion* litigation.

**HYUNDAI'S MOTION TO DISMISS**

Hyundai moves to dismiss Count 1 of CWC's First Amended Counterclaims under Federal Rule of Civil Procedure 12(b)(6). Hyundai contends CWC is alleging the same infringement of the '627 patent that was adjudicated in the *Orion* litigation. It is clear from CWC's response that it is intending to allege infringement by the redesigned websites and it is not intending to re-allege the already-adjudicated infringement. Accordingly, the Court **DENIES** the motion.

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

**Applicable Law**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996);

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. When both parties move for summary judgment, each motion is independently assessed on its own merits. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1337 (Fed. Cir. 2005).

**Analysis**

Hyundai and CWC bring cross motions for summary judgment on whether Hyundai's redesigned websites continue to infringe the '627 patent. The facts are undisputed—CWC and Hyundai do not dispute how the redesign has changed the accused websites. At the *Orion* trial, Hyundai presented evidence of the prior art Bell & Howell's IDB2000 and Reynolds & Reynolds PartsVision systems. Hyundai contends that CWC's current infringement theory against the redesigned websites is inconsistent with how Orion previously distinguished the prior art to avoid invalidity. Hyundai argues that CWC should be judicially estopped from advocating inconsistent positions in the two cases.

"[G]enerally, judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Whether judicial estoppel applies cannot be reduced to a general formulation or principle, however courts do consider three factors. *Id.* at 750. "First, a

4

party's later position must be 'clearly inconsistent' with its earlier position." *Id*. Second, courts consider whether the party succeeded in persuading the court to accept its earlier position, such that an inconsistent position in a later proceeding would create the perception that either the first or second court was misled. *Id*. Third, courts consider whether the party seeking to assert the inconsistent position would derive an unfair advantage from doing so or impose an unfair detriment on the opposing party if not estopped. *Id*. at 751.

The '627 patent, claim 1, step (d) requires "receiving the gathered parts-related information and compiling the parts-related information into a proposal meeting the customer's requirements." The Court previously construed "proposal" to mean "information intended for conveyance to a potential customer." *Orion*, 6:05cv322 (Docket No. 488) at 1 (April 10, 2007); *Orion IP, LLC v. Staples, Inc.*, 2:04cv297 (Docket No. 307) at 4–5 (E.D. Tex. Dec. 15, 2005) (Davis, J.). Hyundai contends that Orion distinguished the prior art systems at trial because the information they generated was only shown to dealers. Hyundai argues that Orion took the position that the "proposal" claimed by the patent was directed at proposals intended for conveyance to retail customers—consumers—and that it excluded proposals intended for conveyance to dealers. Hyundai further contends its redesigned sites are intended solely for dealer use and not retail consumers, like the prior art distinguished at trial. Hyundai argues that because Orion limited its claim scope at trial to avoid the prior art, CWC is now bound by that limited claim scope for infringement purposes.

Orion distinguished the prior art systems as not generating a proposal intended for conveyance to a potential customer because the systems generated information that included the dealer's cost and dealer's markup and therefore was not intended for the customer. CWC argues that

5

the prior art was distinguishable at trial because the prior art parts dealers were the "sellers" and the retail consumers were the "customers" in the transactions described at trial. CWC further argues that at trial Orion presented testimony that Hyundai's dealers were the "customers" in transactions where the dealers purchased parts from Hyundai and the retail consumers were the "customers" in the transactions where the retail consumers purchased parts from the dealers. As to the redesigned websites, CWC alleges Hyundai is still selling parts to its dealers, who are "customers" in those transactions. Therefore, according to CWC, Hyundai's current and former websites are distinguishable from the prior art presented at trial.

Judicial estoppel does not apply here because Orion's and CWC's positions are not "clearly inconsistent." At trial, the prior art systems were discussed in the setting of a dealer utilizing them to sell parts to a retail customer. Orion distinguished the systems by arguing that they did not generate a "proposal" because they generated information, such as the dealer's markup and cost, that was clearly not meant to be shown to the customer. Thus, Orion distinguished the prior art because the alleged "proposals" were only intended to be seen by the seller (the dealer) and not by the buyers (the customer). The important distinction is not that the information generated was only seen by the *dealer*, but that it was only seen by the *seller* in the transaction, not the buyer. In this suit, CWC is accusing sales where the dealers purchase parts from Hyundai. Thus, in the accused transactions, the dealers are the buyers or customers and Hyundai is the seller. Hyundai does not dispute that in those situations, the dealers (the buyers) view the websites at issue and the content of those websites has not materially changed since the *Orion* trial.

Hyundai contends that it presented evidence at trial that the prior art systems were "capable of generating, and did generate, 'information intended for conveyance to a customer'—whether the

6

customer was a dealer *or* a retail consumer." Docket No. 78, n.1 (citing May 24, 2007 Tr. at 55-56, 60, 64–66, 70–71, 96.) However, this testimony does not clearly show that the prior art systems were used by manufacturers to sell parts to their dealers. *See* May 24, 2007 Tr. at 55-56 (David Gump, former President of Bell and Howell, discussing who his customers were in 1987, but never saying those customers used the prior art systems to sell parts to their dealers); 60 (discussing the ability to print from the screen and the ability to access pricing information); 64–66 (describing that the prior art system was designed to be used at a parts counter, but that some dealers wanted to put them at a work station in the mechanic's bay without describing how that work station would have been utilized); 70–71 (describing a promotional materials that demonstrated the system could be used in multiple places in a dealership without describing how it would be used in those places); 96 (generally describing car companies' interest in the system). None of the portions of the transcript that Hyundai cites clearly describe that the prior art systems were used to facilitate sales between manufacturers and dealers, as CWC is alleging infringe here.

Hyundai contends that at trial Orion limited the meaning of "customer," as used in the Court's construction of "proposal," to "retail customer" in how Orion distinguished the prior art. As shown, the portions of the trial transcript that Hyundai relies upon do not support this position. Additionally, at trial, Orion specifically accused the Hyundai website used for selling parts from Hyundai to its dealers.

> Q   All right. Thank you. I'd like to move over to the parts proposal patent now. And we're going to do very much what we did with that patent, although this one may be actually a little bit shorter.
>      First, I want you to tell us what aspect of Hyundai's business does this parts proposal relate to.
> A    It relates to this second website that I told you ladies about, the hyundaidealer.com website, which is proprietary to the Hyundai dealers.

7

> And that website is used for parts -- to sell parts for the dealers to buy parts, if you will, from Hyundai. And it's -- you can think of it in this sense: That the customer is really the dealer, and Hyundai's goal in providing that service is to motivate their dealers to buy parts from the Hyundai Motor Corporation, so that they would have those parts in stock. Certainly the dealers want to use them either to repair cars in their service department or to sell them to their customers.
>
> But the customer here is the dealer, and the motivation for having that website is so that Hyundai can sell part for their automobiles to their dealers.

May 22, 2007 Tr. 158:17–159:13. Hyundai argues that Orion proffered this broad infringement theory early in trial, but then retreated from it later to distinguish the prior art. However, Orion sought damages and was awarded damages for the sales between Hyundai and its dealers. Thus, Orion did not narrow its infringement theory during trial to avoid the prior art.

Hyundai has not shown that its accused websites now function in the same manner as the prior art presented at trial in light of Orion's limitation of claim scope at trial. CWC accuses Hyundai of using its websites to sell parts to Hyundai dealers. Orion did not limit its claim scope as Hyundai alleges to avoid the prior art, and the evidence does not show that the prior art systems were used in this manner. Accordingly, the Court denies Hyundai's motion for summary judgment.

CWC also moves for summary judgment, arguing that Hyundai's websites have not materially changed since the *Orion* trial. Hyundai contends that CWC has not come forward with proper summary judgment evidence on this issue. However, it is undisputed how the redesigned websites function, and in light of the infringement theory Orion put forth at trial and the evidence of infringement put forth at trial, the Court finds the websites are not materially different from those previously tried and that they do infringe the '627 patent. Hyundai has not raised a question of material fact on this issue. Accordingly, the Court grants CWC's motion for summary judgment.

## CONCLUSION

For the reasons given above, the Court **DENIES** Hyundai's motion to dismiss, **DENIES** Hyundai's motion for summary judgment, and **GRANT**S CWC's motion for summary judgment.

**So ORDERED and SIGNED this 24th day of August, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**